## SCOWS 3, 16, AND 17.

### LUCKENBACH v. SCOWS 3 AND 16.

### SAME v. SCOW 17.

*(District Court, S. D. New York. April 30, 1892.)*

SALVAGE—SCOWS ADRIFT IN GALE—TOWAGE TO PORT.

Four scows, employed in carrying refuse from New York to the dumping grounds outside of Sandy Hook, were blown out to sea in a violent gale. Two men were aboard each scow. Tugs went out to search for them, but were unable to find them, and could not have brought them in if they had been found, so heavy was the weather. Libelant's tug Luckenbach, a powerful seagoing vessel, worth $60,000, and carrying a crew of 11 men, then put out from New York, and, on one trip, discovered two of the scows 60 miles from Sandy Hook, and, on a second attempt, found a third 70 miles at sea. These were brought safely into port; the fourth scow was never recovered. The three scows would in all probability have been lost but for the Luckenbach. The latter was the only boat, save one, capable of rendering the service, and that one was unsuccessful. The work was of unusual difficulty, and was attended with danger to the tug. *Held*, that the libelant should receive, as salvage, one third of $26,000, the value of the scows.

In Admiralty. Libel by Lewis Luckenbach against certain scows. Decree for libelant for salvage.

*Peter S. Carter*, for libelant.

*Carpenter & Mosher*, for claimants.

BROWN, District Judge. On the morning of Tuesday, January 26, 1892, four scows known as Nos. 3, 5, 16, and 17, employed in carrying refuse from New York to the dumping grounds outside of Sandy Hook, got adrift in a violent gale from the northwest. The tug Webster which had in charge Nos. 5 and 17, had fouled her propeller with the hawser leading astern, and had become disabled; and the tug Nichols, having charge of scows Nos. 3 and 16, after vainly endeavoring to assist the Webster and her tow, was obliged to leave her own scows at anchor in order to get water. In the increasing gale of the morning, the anchors dragged and all the scows were carried out to sea. When this became known in the harbor, some tugs soon after noon went out to rescue them, but after going a few miles outside of Sandy Hook found the weather so heavy that their efforts would be useless, even if the scows should be found, and accordingly returned without having seen them. On Tuesday night the libelant's tug, the Edgar F. Luckenbach, with 11 men, officers and crew, a large and powerful seagoing boat, fitted for such emergencies, and of the value of $60,000, was got in readiness and left Atlantic Basin at about midnight. The weather was extremely heavy; but at about 9 o'clock A. M. on the 27th, scows Nos. 3 and 16 were found about 60 miles outside of Sandy Hook, and brought into the Atlantic Basin a little before midnight of the 27th. Neither of the other two scows having in the mean time been discovered by the three other tugs that had put out for them, the Luckenbach about midnight of the 27th started out again, and at about 10 o'clock of the following

morning discovered No. 17 about 70 miles from Sandy Hook, and succeeded in bringing her into Atlantic Basin, where she arrived about 1 o'clock on Friday morning.

Towards midnight of the 27th the wrecking tug Chapman, well equipped for such service, also went out in search of No. 5 and No. 17, at about the same hour that the Luckenbach left the second time. She saw nothing of either scow, turned about some 10 or 15 miles short of the distance the Luckenback went, and returned unsuccessful. The owner of the Luckenbach sent out another tug to find No. 5. She was not found, but was carried far out to sea; and on the morning of February 1st, a week after she had got adrift, she was sighted about 100 miles to the eastward of Cape Henlopen, and the two men on board of her were taken off by a steamer bound for Philadelphia. No attempt was made to tow the scow into port. A week later, being still afloat and coming near causing a collision with a sailing vessel, she was set on fire by the latter and presumably destroyed. *The River Mersey*, 48 Fed. Rep. 686.

In the *Case of Scows Nos. 9, 16, and 24*, 45 Fed. Rep. 901, this court in a somewhat analogous case allowed a salvage award of 25 per cent. upon $20,000, the value of the scows recovered, the salving tug being worth $15,000. The case was regarded as an extraordinary one, both as respects the peril of the scows and of the persons on board, and the heroism of the salvors. In the present case scows Nos. 3 and 16 were worth $16,000; and scow 17, $10,000. The claimants tendered 25 per cent. of those amounts, which the libelant declined to accept. The only question litigated is whether the circumstances are such as to entitle the libelant to a larger award.

A fair consideration of all the circumstances seems to me to justify the conclusion that the Luckenbach is entitled to a somewhat larger award than was made even in the case cited. The value of the tug employed was four times as great in this case as in that; the service was three times as long; and the difficulties were prolonged in proportion. To the fury of the seas was added extreme cold, which covered with ice both the tug and scows. The seas washed over the tug at stem and stern. One sea nearly carried overboard the mate; and the ice rendered extremely difficult and dangerous the handling of hawsers and the necessary movements upon deck in the rolling and pitching of the tug. Towing in such cold weather exposed the Luckenbach to peril; and in case of any mishap through the breaking of the machinery or the fouling of the hawser, or the unavoidable racing of the engines, or in maneuvering with the scows, the peril of the Luckenbach would have been extreme.

For the claimants it is insisted that these dangers are more fanciful than real; that the Luckenbach was built and equipped for precisely such service, and was able to render it without danger or risk other than such as was incident to her ordinary movements; that neither the crew of the tug, nor the men on the scows, suffered any hardship; that no skill was shown or required in taking the scows into port; that the tug

lost little time that would in fact have been otherwise employed; that the scows were not derelict, but had each two men on board; and that without their assistance the scows could not have been saved, because no line or hawser could have been got on board of them; that the scows could not have foundered, or capsized, or been swamped; and that the danger of collision with other vessels was too slight for consideration.

While these objections have been forcibly urged with a view to reduce the libelant's claim, they seem to me not sufficient to detract from the very high merit of the service. The fact that the Luckenbach was one of a very few harbor boats suitably equipped and able to render this service, rather adds to her merit than detracts from it, (*Coast Wrecking Co.* v. *Phœnix Ins. Co.*, 20 Blatchf. 557, 568, 13 Fed. Rep. 127;) for without such boats and the expense of maintaining them, the property must in such cases be lost altogether. The only other boat shown to have been available and really fitted for the service was the Chapman, and her efforts were unsuccessful. Three other tugs made attempts and abandoned them, though from the recent *Case of Scows No. 9, etc.*, above cited, the hope of a very considerable award was held out to them if they were successful. That the Luckenbach should have found all three of these boats and all the other tugs have found none, is, moreover, the strongest evidence of her skill. No. 5 was not found by any of the other tugs; and a fortnight afterwards, though observed by three different vessels far out at sea, she was not deemed worth saving, and was finally destroyed. The evidence leaves no reason to suppose that any better fortune would have attended the other three scows, and probably all would have been lost, had they not been found by the Luckenbach. She brought them in unharmed.

That the Luckenbach escaped mishap and injury, does not prove the difficulties to be exaggerated or the dangers fanciful; but shows rather excellence in her equipment, and skill in her management. The whole trouble originated in the fouling of the Webster's hawser in a much milder sea. While towing in such heavy weather, the danger of fouling the hawser and of breaking the shaft from racing, are well recognized. *The Lovetand,* 5 Fed. Rep. 107. The scows would not indeed sink unless they first sprang a leak; but upon any sudden leak on one side, they would be speedily capsized, with a loss of the lives of the men on board.

On the whole the case appears to be one in which the Luckenbach rendered a service which no other boat was able to perform. When the enterprise of the whole port was challenged, she alone displayed the skill, equipment, fortitude and perseverance necessary to success. Her work was attended by unusual difficulty; it was conducted with a skill and persistence which no other vessel evinced; and besides saving the lives of those on board, she rescued three of the four scows from what would in all probability have proved a total loss. One third of the value of the scows saved will, I think, be a proper and well-deserved allowance, amounting in one case to $5,333.33; and in the other to $3,333.33, for which decrees may be entered, with costs. Of the

amounts awarded one third in each case will go to the captain and crew, and two thirds to the owners of the boat; of the one third, $200 in the first case and $100 in the second, are awarded to the master, and the rest distributed among the master, officers, and crew in proportion to their wages.