## THE NIAGARA.

(District Court S. D. New York. October 8, 1898.)

SALVAGE—SANTIAGO DE CUBA—STRANDING—WEAR AND TEAR TO SALVING SHIP —SANDING OF MACHINERY.

The steamship N. having stranded on Colorado Shoals in the harbor of Santiago de Cuba, after several attempts to pull her off by the large steamer Mamaluke and the tug Colon, was got off on the fourth day. A large claim of several thousand dollars was interposed by the steamer for injuries to the machinery by sanding, the wear of bearings and the necessary expense of docking and repair, besides payment for salvage service; but the amount of injury during the service not being definite or clearly separable, held that the latter should be treated as among the incidents and risks of the service; and that the Mamaluke, considering her risks, and the danger and value of the N. ($125,000) should be allowed, including $400.82 for coal and broken hawsers, the sum of $7,-100.84; and the Colon the sum of $815.[1]

---

[1] As to salvage awards in federal courts generally, see note to The Lamington, 30 C. C. A. 280.

Converse & Kirlin, for Sampson.

Howland & Murray, for Spanish American Co.

Cowen, Wing, Putnam & Burlingham, for defendants.

BROWN, District Judge. The above libels were filed to recover compensation for salvage services rendered by the steamship Mamaluke and the tug Colon, September 9 to 12, 1897, in hauling the steamship Niagara off Colorado Shoals in the harbor of Santiago de Cuba, where she had grounded in going up the bay. The Niagara is an iron screw steamship 275 feet long, of 2,265 gross tons and valued at $125,000, running on Ward's Line and carrying passengers and freight to Cuban ports. Her cargo at this time was worth $4,157. The shoal where she grounded is about one-third of the way up from Morro Castle to the city of Santiago. The pilot in charge on rounding Corda Bank buoy thought the Niagara could not make the turn to the right so as to clear the Colorado buoy in the southern and regular channel, and therefore attempted to go through the narrow channel about 300 feet wide between Colorado Shoal and Coloradita Shoal to the westward. When nearly through this channel, the Niagara caught on the northwesterly side of the Colorado Shoal, on a shelving bottom of sand and mud where she stuck fast for about one-third her length amidships while her bow and stern were in deep water.

In this situation, with a strong list to port, the Niagara was liable to hogging strains if she lay there for any considerable time. The only two vessels in the harbor that were available for assistance, were the tug Colon belonging to the Spanish American Company, and the steamship Mamaluke, of which the libelant Sampson was master, and which was about to load a cargo of ore. Both vessels were requested to go to the Niagara's help. The Colon reached the Niagara the same evening, September 9th, at high water, and attempted to haul her off, but without success. Both vessels renewed the attempt at the next high tide on the morning of the 10th, and again on that evening, and also on the following morning, but without being able to move the steamer. The Mamaluke was a steamer 325 feet long, and of 2,668 gross tons. On account of her size she was under some embarrassments in maneuvering in and about the narrow channel, and was in some danger of striking the rocks and sand on the bottom of the Coloradita Shoal. During the several attempts above named every available means to move the Niagara were used, and several hawsers were broken.

After the unsuccessful endeavor of the morning of Saturday the 11th, it was determined to lighten the Niagara so far as possible, and to load the Mamaluke so as to add to her weight, and at the same time completely immerse her propeller and thereby add to her towing power. The Colon accordingly aided the Niagara in unloading what little cargo she had on board, together with her stores and coal, and the water from her boilers, thus lightening her draft from 2 to 4 inches, while the Mamaluke took on a cargo of about 3,200 tons of ore. The next morning, the 12th, on her way to sea, the Mamaluke and the Colon renewed their efforts, and after about an hour's work succeeded in pulling the Niagara off the shoal without serious injury.

There is little or no controversy about the above facts. The difference between the parties is in respect to a suitable compensation, and particularly as respects a claim by the Mamaluke for repairs to her rudder, and for the wearing away of her stern bush, tail, shaft and stern bearings, and the straining and heating of her shafting, through so frequent changes and much work of her propeller in mud and sand. The plaintiff's evidence tends to show that on examination a voyage previous, the bearings showed only $1/32$ of an inch wear; while after this service they were found worn down $\frac{1}{4}$ of an inch, with scratches indicating sand as the cause; and that the expense of repairs, including docking and demurrage during repair, was in all $2,833.29, besides $400.84 for coal consumed and three hawsers broken. The defendant contends that the damage to the machinery is not shown to be attributable to sand damage, nor to the salvage services.

There are several circumstances which make somewhat doubtful the libelant's contention that all the damage to the stern bearings was done during the salvage service. As respects claims for mere wear and tear of the ship there is usually great difficulty in distinguishing what arises during such a service from what arose before or after; and except in very plain cases, where the injuries to the vessel are clearly distinguishable, consisting of some distinct damage necessarily arising from the service rendered (The Florence, 65 Fed. 248), it has seemed to me more appropriate to treat the injuries for wear and tear as one of the incidents of the service, not to be compensated for by a separate allowance, but as one of the risks of the service enhancing its merit and its rewards, because of this risk as one of the hazards of the enterprise (The Alaska, 23 Fed. 597, 610–612). If the vessel saved were to be held always to make good any damage that might happen to the salvor during the service, the former might be eaten up by the damage claim, and the service become a fatal injury instead of a benefit. See cases cited in The Lamington, 30 C. C. A. 271, 86 Fed. 675.

Such items as the consumption of coal and hawsers broken, are perfectly separable and necessarily belong to the service alone, and these to the amount of $400.82 I allow separately. The considerable value of the Niagara ($125,000), her liability to great damage from straining and hogging if not speedily got afloat; the absence of other available help, and the various risks incident to the rendering of such a service by large steamers like the Mamaluke in and about a narrow channel and sandy and rocky shoals, and its complete success at last, all make this a service of very considerable merit. By far the largest part of the work was no doubt rendered by the Mamaluke, and her help I have no doubt was indispensable. There does not seem to me to be the least probability that the Colon alone could have got the Niagara off. Her service was comparatively small; her power was far less than the Mamaluke's; and her risks from her small size and light draft, were much inferior. She devoted, however, several days to the work, and lost one of her regular trips with freight and passengers.

On all the evidence and circumstances, I am of opinion that $815 will be a fair and suitable award to the Colon, and $7,100.84 to the Mamaluke, including in the latter sum the allowance for coal and

broken hawsers above mentioned, and all her other risks of grounding and wear and tear of ship or machinery. As the extra labor of the crew was in this case small, I allow to the owners of the Mamaluke $6,300.84 of the above amount; to the master $150; to the chief engineer $75; and $575 to the rest of the officers and crew in proportion to their wages.

Decrees may be entered accordingly with costs.