THE JOHN FLEMING. THE JULIA A. TRUBEE. THE SCOW E 25.

(District Court, S. D. New York. March 16, 1905.)

1. COLLISION—TUG WITH LONG TOW AND SCHOONER—FAILURE OF TUG TO KEEP OUT OF THE WAY.

A tug returning from the dumping grounds with two scows in tow on a line, the whole 1,400 feet in length, *held* solely in fault for a collision in New York Bay between the rear scow and a schooner beating her way in, for failure to exercise the care required, because of the length of the tow, to keep out of the schooner's way; the schooner having properly held her course until danger of collision became imminent.

2. SALVAGE—RESCUE OF SCOW ADRIFT AFTER COLLISION.

A salvage award of $450 made to a tug for rescuing and taking to a place of safety a scow worth $4,500, which had gone adrift and filled after a collision in New York Bay, including the value of a hawser destroyed by the tug in the service.

[Ed. Note.—Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.]

In Admiralty. Cross-suits for collision and suit for salvage.

Wing, Putnam & Burlingham, for Charles G. Sanford and others, and for Timmins and others.

Albert A. Wray, for Brown & Fleming Contracting Company and scow E 25.

ADAMS, District Judge. The first of the above entitled actions was brought by Charles G. Sanford, et al., owners of the schooner Julia A. Trubee, to recover the damages caused to the schooner by a collision which occurred between scow E 25, in tow on a hawser of the tug John Fleming, on the 3rd day of April, 1904, in New York Bay, above the Narrows, about 9 o'clock P. M. The second action was brought against the schooner to recover the damages caused to the scow and the salvage imposed upon her by the collision, and the third action was brought by the owners of the tug Mutual to recover the said salvage.

It appears that the schooner was bound from Jacksonville, Florida, to New York, with a cargo of lumber, including a deck load. The Fleming and tow were returning to New York after dumping the loads of the scows. The first scow was on a hawser of about 120 fathoms and the other followed, on a hawser of about 60 fathoms. The

whole tow, including the vessels, was in the neighborhood of 1100 feet in length. The tow was going faster than the schooner, which was beating up the bay, with a north north-west wind. The tide was flood. The place of collision was about the middle of the channel.

After the vessels came in view of each other, the schooner tacked across the course of the tow towards Staten Island and then back towards Long Island. On tacking for Staten Island again, the tow was somewhat in the schooner's way and she pinched up in the wind to let the tow pass ahead of her. Finding that she was getting close to the tow she attempted to go about again and while engaged in the manœuvre, the last scow was brought into collision with her port stern, doing considerable damage to the schooner and parting the hawser between the scows. The schooner anchored, and the scow being adrift for some time, without the knowledge of the Fleming, was picked up by the tug Mutual.

There can be little doubt as to the tug's responsibility for the effects of the collision. She was bound to keep herself and tow away from the schooner and it was the latter's duty to keep her course until it was obvious that a collision could not be averted by the tow. As the vessels were approaching each other, the tug changed her course slightly to port, which brought the last scow somewhat to the Long Island side of the other vessels in the tow, and before the schooner gathered full way on the last tack, the collision took place. Tugs with these long tows are required to exercise the utmost care in their management, which the evidence shows was not manifested in this case. The Fleming is therefore responsible to the libellants Sanford, et al., for their damages.

The action of Timmins, et al., against the scow E 25, was to recover salvage on the latter. It appears that the Mutual picked up the scow about 10 o'clock P. M. and towed her to a place of safety in Erie Basin, where she was made fast shortly after midnight. When found, about 10 feet of her were under water at one end, and during the trip to Erie Basin, she became completely submerged and helpless, although still capable of being towed. Her value when rescued was about $4500. The tug sacrificed a hawser worth about $100 in the service. This amount the libellants are entitled to recover, in addition to a reasonable award for the salvage services, which, in view of some danger to the scow in her helpless condition, I think may be justly fixed at $350.

Decree for the libellants Sanford, et al., with an order of reference. Decree for the libellants Timmins, et al., for $450. The libel of the Contracting Company against the schooner will be dismissed.