## THE NO. 92 et al.

### WATER FRONT CONTRACTING & LIGHTERAGE CO. et al. v. GOODWIN-GALLAGHER SAND .& GRAVEL CO.

(Circuit Court of Appeals, Second Circuit. May 1, 1918.)

No. 250.

1. SALVAGE ⇐=37—RECOVERY—AMOUNT.
   Where a tug in charge of four scows broke down, and had to abandon them at a point where they were in grave danger from tide and reefs, the several scows must be treated in the same condition, and a salvor, which rescued them all, is entitled to the same award for each scow; it being wholly speculative whether the first scow was in greater danger from the reefs than others.

2. SALVAGE ⇐=26—ELEMENTS OF COMPENSATION.
   In a suit for salvage services, where it appeared the salving vessel was by a court of competent jurisdiction held responsible for injuries

to another vessel during the salvage operations, that finding is conclusive, and the award in favor of the salvor cannot be increased by the amount allowed against it.

3. SALVAGE ☞24—AWARDS—AMOUNT.

In ascertaining the nature of salvage services, the difficulty and the risk of injuring some other craft should be considered; the problem being, not to award so little as to discourage salvage, or so much as to encourage unnecessary and exaggerated service.

4. SALVAGE ☞51—AWARD—EFFECT.

The trial court, in making an award for salvage services, has much the duty of a jury, and the amount fixed by it will not be disturbed, if within those limits which define the maximum and minimum which reasonably should be awarded.

5. SALVAGE ☞34—AWARD—AMOUNT.

Where a tug broke down and was forced to abandon four scows, worth about $16,050, and they were in danger from tides and reefs, a salvor, which rescued the scows and brought them to a safe anchorage, *held* entitled to $600, though the services did not involve any danger and took but little time.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by the Water Front Contracting & Lighterage Company and others against Scows Nos. 92, 102, 118, and 138, and their tackle, claimed by the Goodwin-Gallagher Sand & Gravel Company. From an award, libelants appeal, on account of its insufficiency. Reversed, with directions.

Appeal from the decree of the District Court filed July 7, 1916, awarding to libelants $190 as compensation for salvage services. The sole ground of appeal is the inadequacy of the award.

Macklin, Brown & Purdy, of New York City (Pierre M. Brown, of New York City, of counsel), for appellants.

Foley & Martin, of New York City (George V. A. McCloskey, of New York City, and William J. Martin, of Chicago, Ill., of counsel), for appellee.

Before HOUGH, Circuit Judge, and LEARNED HAND and MAYER, District Judges.

MAYER, District Judge. On September 25, 1914, at about 11:30 at night, the tide strong flood and a heavy wind from the west, the steam tug Olympia, belonging to claimant, was bound up through Hell Gate. At the entrance to the Gate, between Mill Rock and Hallett's Point, the Olympia's machinery broke down, and she was therefore forced to abandon four sand scows which she had in tow, thus leaving them adrift to go up in the flood tide through the Gate. These scows were worth about $16,500. Libelants' steam lighter Sullivan went to the assistance of the scows and towed them into Potts Cove, the nearest and safest place, where she tied them up to a dock. When the Sullivan was turning this rather heavy tow around and stemming the tide, the flood tide swung the rear scow against the side of the scow William Turner, which was moored at the dock, causing dam-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

age for which libelants have been held responsible in the sum of $400.

[1] The service rendered by the Sullivan occupied about one-half hour, close to midnight, when there was danger of going aground, and when the salved scows were drifting up through the Gate, with the danger of striking on the Scaley Rocks, and, in such event, if not sunk, then at best fetching up on Casino Beach. For this service the court awarded $100 for the first scow and $30 each for the other three scows, making a total of $190.

The theory upon which there was a differentiation between the amount allowed for the first scow and the remaining three was that the first scow would bear the blow if the four went on the rocks. Which scow would have suffered the most severe injury is necessarily a matter of speculation, and we are unable to find any basis other than to consider the constituent items of the salved property—i. e., four scows—as similarly situated.

[2] The service did not involve any danger and took very little time; but it was prompt and effective, and averted the probability either of total loss or substantial injury. In performing the salvage service, the salvors injured the William Turner, as noted supra, and it has been held that such injury was negligently inflicted. This finding by a court of competent jurisdiction cannot now be questioned, and hence The Ashbourne (D. C.) 99 Fed. 111, is inapplicable, and the award in favor of the William Turner should not be added to the award for salvage.

[3, 4] But in ascertaining the nature of the salvage service it is fair to consider the difficulty of safely landing the tow and the risk run of injuring some other craft, for such risk is an element of hazard quite the same in principle as the risk of injury to the salving boat itself. The circumstances constituting the "main ingredients" in determining the amount for salvage are too well known to need repetition. The Blackwall, 10 Wall. (77 U. S.) 1, 19 L. Ed. 870. The problem usually is not to award so little as to discourage salvage aid, nor so much as to encourage unnecessary or exaggerated service; and, as the trial court, in respect of the quantum has much the duty of a jury, the amount fixed by it will not be disturbed, if within those limits which define the maximum and minimum which reasonably should be awarded.

[5] In the case at bar, however, we think that the award was wholly inadequate. The case is quite like Stebbins v. Five Mud Scows (D. C.) 50 Fed. 227, except that the danger was greater and the hour later. Taking into consideration the value of the salved property and the nature of the service, we are of opinion that libelant was entitled to three times (in round numbers) the amount decreed below, and therefore that the award should be $600.

The decree is accordingly reversed as indicated, with costs of the appeal.