## THE WAHKEENA.

## CHARLES R. McCORMICK LUMBER CO. of DELAWARE v. HUBBLE TOWING CO.

### No. 6557.

Circuit Court of Appeals, Ninth Circuit.

March 7, 1932.

Rehearing Denied April 4, 1932.

Lillick, Olson & Graham, Ira S. Lillick, and Joseph J. Geary, all of San Francisco, Cal., and Wm. R. Lee, of Tacoma, Wash., for appellant.

John C. Bowen, of Seattle, Wash., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and McCORMICK, District Judge.

SAWTELLE, Circuit Judge.

At about 10:30 a. m., on August 29, 1928, the steam schooner Wahkeena, a wooden vessel, loaded with a cargo of more than one million feet of lumber, sailed from Aberdeen,

Grays Harbor, Wash., bound for San Pedro, Cal.

Outside the harbor, but inside the bar proper, the schooner, having encountered a dense fog, struck broadside upon the south jetty, which is constructed of rock and projects out into the navigable channel. The port side of the Wahkeena was on or against the jetty, and she was held fast there by the force of the tide from 1:11 p. m. to about 5 p. m.

All efforts of the master of the stricken schooner to pull her off or away from the jetty were unsuccessful. Because of a swell, she began pounding upon the jetty. The tide, with an unusually strong ebb, was running southerly across the jetty.

The Wahkeena then blew distress whistles and sent radio messages requesting assistance. One of the radiograms reached the vessel's agents, the Grays Harbor Stevedore Company. An employee of that company requested Frank P. Hubbell, the president and manager of the appellee, to send a tug to the Wahkeena. Hubbell suggested that, in view of the fact that the John Cudahy, one of the company's tugs, was already probably in the vicinity of the south jetty, the Wahkeena should blow her whistle so that she could pick up the Hubbell tugboat. A message to that effect was wirelessed to the Wahkeena, and Captain C. J. Johanson, the master of the vessel, continued sounding her whistle. Shortly before 2 p. m., the Cudahy, having heard the distress signals, but having received no instructions or other communication from her home office, came alongside the Wahkeena and put a line on her starboard quarter, or stern.

After pulling on the Wahkeena for about one hour without success, the Cudahy suspended her efforts and stood by, repeatedly blowing long distress signals.

The tidal current having slackened at about 4:15, at about 5 p. m. the tugboat again put a line on the Wahkeena, this time over the schooner's starboard bow.

At this juncture, serious conflicts in the testimony are encountered. First, the record discloses assertions, on one hand, that the schooner's starboard list of about 15 degrees continued while she was towed back to the Aberdeen docks, and, on the other hand, that "she went on an even keel and stayed that way until she was pumped out." Second, there was testimony that, when swinging the Wahkeena around, the Cudahy caused the schooner's stern to hit the rocks of the jetty "the heaviest blow that she had had at all

times." The possibility of such an occurrence was scouted by Captain V. E. Miller, master of the Cudahy. There is, however, ample evidence that the schooner suffered considerable damage during the stranding.

Finally, there is still sharper conflict as to whether or not the Wahkeena was actually pulled off the jetty by the tugboat, or whether she was already afloat when the Cudahy threw her line over the schooner's bow in the second and successful attempt to tow the Wahkeena back to the docks. The lower court, however, found, and we believe correctly, that "the preponderance of the evidence is to the effect that the 'John Cudahy' pulled the 'Wahkeena' off the jetty and towed her back slowly towards Aberdeen."

After the Cudahy and her tow had left the fog behind, the tug Tyee, also owned by the appellee, and the Tussler, a tugboat belonging to other interests, assisted in towing the Wahkeena back to the Aberdeen docks, which were reached between 9 and 9:30 p. m., on August 29. The docks are about 16 miles from the spot where the Wahkeena stranded.

There was delay in pumping out the Wahkeena, and she settled down to her top deck after 2 a. m. the following day.

The lower court found the total net salved value of the schooner and cargo at Grays Harbor to be $16,851.81, and awarded the appellee the sum of $8,162.50, with interest at 6 per cent. from August 29, 1928, until paid. A modification of this award, which is virtually a moiety, is sought by the appellant.

Aside from the conflicts in the testimony already noticed, there are two other material questions concerning which the parties are in sharp disagreement: (1) What would have been the Wahkeena's chances of saving herself had she not been rescued by the Cudahy? (2) Were other tugs available to the Wahkeena at the time the Cudahy came alongside?

Since both of these matters go to the value of the appellee's services, we will give them some brief consideration.

(1) The appellant contends that there were at least 18 other tugs available to assist the schooner, and there is some testimony to support this assertion. On the other hand, there is ample evidence that the John Cudahy was "considered the strongest bar tug there" and that few, if any, of the craft suggested by the appellant would have been able to find the Wahkeena in the thick fog,

or would have been able to tow her back if they had found her.

(2) Similarly, the appellant cites some testimony tending to show that the Wahkeena could have kept afloat, drifted clear of the jetty, and saved herself. There is, however, considerable evidence that the stricken schooner's chances of saving herself, in her crippled condition, were extremely slim. It must be remembered that both of the Wahkeena's boilers were cut out, and that the vessel was without steam. Furthermore, her radio went out of commission, and she had no signaling device other than her bell and rockets.

On the whole, we are inclined to agree with the lower court that both the Wahkeena and her rescuer encountered some danger. We likewise concur with the view that "The Court can only speculate as to whether the 'Wahkeena' would have come off the jetty with the turn of the tide, and, if so, whether she would have been picked up by some other boat before again stranding."

We do differ, however, with the learned judge below as to the degree of the danger and as to the value of the Cudahy's services in towing the stricken schooner back to port.

The services were, indeed, valuable, but not to the extent of meriting a moiety award.

The main ingredients in determining the amount of the reward to be decreed for a salvage service were thus listed by the Supreme Court in the early case of The Blackwall, 10 Wall. (77 U. S.) 1, 14, 19 L. Ed. 870: "(1.) The labor expended by the salvors in rendering the salvage service. (2.) The promptitude, skill, and energy displayed in rendering the service and saving the property. (3.) The value of the property employed by the salvors in rendering the service, and the danger to which such property was exposed. (4.) The risk incurred by the salvors in securing the property from the impending peril. (5.) The value of the property saved. (6.) The degree of danger from which the property was rescued."

■■ As was said by the court in The High Cliff (C. C. A. 2) 271 F. 202, 204:

"The highest compensation ordinarily allowed in the most meritorious cases is one moiety, which is rarely given except in the case of a derelict."

"The primary consideration in salvage cases is the amount of benefit conferred." The Nord Alexis (C. C. A. 2) 273 F. 160, 162.

See, also, Ehrman et al. v. The Swiftsure (D. C.) 4 F. 463, 467, 468.

■ It is too fundamental to require citation of authorities, that each salvage award depends upon the special circumstances in each case. We shall examine one or two decisions, however, as helpful illustrations of the principles which we believe should be applied in the instant case.

In The Niagara (D. C.) 89 F. 1000, 1002, the salved steamer's value was $125,000, and she was under "liability to great damage." The two salving vessels were awarded a total sum of $7,915.84.

The schooner Edith L. Allen had a sound value of $25,000. She was injured by stranding to the extent of about $3,500. The saved cargo was worth $8,000 and the freight was valued at $3,300. The United States District Court for the Southern District of New York awarded the salving vessel, worth about $50,000, the sum of $6,500. In the salvage work the tug was damaged to the extent of $1,700. The Edith L. Allen, 122 F. 729, 731. The Second Circuit Court of Appeals reduced the award to $4,500. 129 F. 209, 212.

In this connection, it may be noted that, in the instant case, the lower court found that the Cudahy was worth about $35,000, and the Tyee about $45,000.

The appellee cites a number of cases in which comparatively high awards were allowed. In most of these cases, however, the awards did not reach moieties, and there were circumstances of unusual effort and perseverance, if not actual heroism. We do not find such circumstances in the instant case.

■ We are of the opinion that the award of virtually a moiety in the instant case was excessive, and that the amount should be reduced to $5,000, with interest at 6 per cent. from June 27, 1931, the date of the decree.

The decree is reversed and the cause remanded, with instructions that the decree be modified in accordance with the holding announced in this opinion.

Reversed and remanded, with instructions.