## THE FEARLESS.

### No. 7885–BH.

District Court, S. D. California, Central Division.

March 31, 1948.

Herbert R. Lande, of San Pedro, Cal., for libelant.

Overton, Lyman, Plumb, Prince & Vermille Dan Brennan, all of Los Angeles, Cal., for respondent and claimants.

McCORMICK, District Judge.

This is a libel in rem against the Oil Screw "Fearless," and her gear, all equipment and appurtenances.

The ship is a purse seine fishing craft, 78.7 feet in length, 23.1 feet in width and 11.0 feet in depth, built in 1935, of 127 gross tons, and is valued at approximately $100,000. She had been at all relevant times sailing in waters of the Gulf of Lower California, Mexico.

On June 4, 1947, while so engaged in fishing, the "Fearless" sprang a leak through a slack seam under her port guard rail, and at about four o'clock in the afternoon it was discovered by her crew that she was rapidly taking water. The bilge pumps of the vessel were applied but mechanically failed to effectively discharge water, which at the time was flooding the vessel and threatening the ship to be in an imminent sinking condition. Thereupon the "Fearless" radioed for immediate help and assistance.

Two fishing vessels, the "Sea Giant" and the "North Queen," of similar types to the "Fearless," along with other fishing vessels in the vicinity at the time, responded; the "Sea Giant" arriving alongside the "Fearless" in about twenty minutes after the distress call was sent out and at least one-half hour ahead of "North Queen." The "Sea Giant" found the "Fearless" in extremis, with water over her guard rail, the engine room flooded, and a completely disabled motive power as a result. While the weather was clear and the "sea" calm, there were some swells which increased the danger to both the "Sea Giant," which tied up on the starboard side of the "Fearless," and to the "North Queen," which later did likewise on the port side of the "Fearless." The crew of the "Fearless" alternated with those of the "Sea Giant" in manning the hand pumps on the "Fearless," and with two pumps rigged up from the "Sea Giant," and by unloading fish aboard the "Fearless," the volume of water flooding the "Fearless" was substantially checked, but the vessel was still in grave danger of sinking. In this situation, upon the arrival of the "North Queen," her engineer in a skillful mechanical manner and with hose coupling supplied by the prudent master of the vessel "Del Rio," who also had responded to the "Fearless" "May Day" call, together with the co-operation of the "Sea Giant" and the crew of the "Fearless," at about 10:30 P.M. pumped the "Fearless" dry and rendered her safe from the danger of sinking. She was in need of further assistance, however, as her engine was disabled and it was necessary that she be towed into port at Guaymas, Mexico, for safety and repair. There were numerous fishing vessels around and about the "Fearless" throughout the salvage operations and at all times when she was in danger of sinking. Both the "Sea Giant" and "North Queen" offered to tow the disabled "Fearless," but as the "North Queen" was more adequately equipped for such service the acting master of the "Fearless" accepted her service and the libeled vessel was safely towed into Guaymas in approximately thirteen hours with a cargo of approximately sixty-five tons of marketable fish.

The "North Queen" is a purse seine fishing oil screw vessel of one hundred and fifty tons gross, whose length is 82 feet, and with her gear, appurtenances and equipment was at all relevant times worth around $125,000. She was jointly owned by libelant and three others and carried a crew of twelve, with libelant as master.

The foregoing are the salient facts of salvage established by the evidence at the hearing and in the depositions on file.

It is clear that the joint services rendered by "Sea Giant" and "North

Queen" were contributing factors to the saving of the "Fearless," and the compensation to be awarded in admiralty should appropriately evaluate the respective contributions of the salvors. See The Blackwall, 77 U.S. 1, 19 L.Ed. 870. In other words, the award for salvage service is a concrete problem, the solution of which depends entirely upon the circumstances and elements credibly shown in each case. The Wahkeena, 9 Cir., 56 F.2d 836.

In any fair appraisal of the services of the "North Queen" they cannot be characterized as mere pumping and towage.

It is true that initially the Sea Giant employed the promptitude, labor and energy that kept the water-logged "Fearless" from sinking, but the inadequacies of equipment available until the arrival and action of the "North Queen" reasonably show that the major effective salvage operation resulted from the skillful employment of two pumps of the "North Queen," whose water discharging capacities enabled the "Fearless" to permanently remain afloat and be docked and tied up safely at Guaymas. It is, however, problematical, by reason of the presence of many other fishing vessels in the vicinity ready, willing and able to render assistance to the "Fearless" as to whether she would have sunk and been a total loss but for the action of the "North Queen", as alleged by libelant. Cf. The Niels Nielsen, 2 Cir., 277 Fed. 164.

Suffice it to say that the service rendered by the "North Queen" was skillful and beneficial in rescuing the "Fearless" from grave danger, notwithstanding the connotations attached to a vessel so named.

We have earlier in this memorandum mentioned the positions of the "Sea Giant" and the "North Queen," respectively, with relation to the "Fearless" during the salvage operations before the vessel was pumped out so as to remain safely afloat. Both salvors incurred risk because of the movements necessary to activate hoses into the flooded vessel, although the conditions of wind and wave were not unfavorable to the operations. Yet, in the performance of salvage service the "North Queen," although not on the "weather" side of the "Fearless," collided with her and sustained some side damage.

Among the items of reward alleged by libelant for which recovery is sought is the claim that at the time of responding to the distress call of the "Fearless" libelant "was on a large school of fish, consisting of approximately thirty tons of tuna; that other large schools of tuna were in the vicinity of libelant's vessel; that there were other purse seine boats in that immediate vicinity; that during the day of June 4th and 5th and part of the 6th such other boats caught between forty and fifty tons of tuna; that but for the fact that libelant went to the aid of the 'Fearless' his vessel would have caught an equal amount of fish; that the value of tuna fish at that time was $310.00 per ton; that when libelant's vessel did return to the fishing grounds on the afternoon of the 6th the fish had left the ground and libelant spent approximately thirty-six days before he could locate fish again in sufficient quantity to load up, with additional loss of time, fuel and maintenance of crew."

This feature of compensation in a salvage proceeding is difficult to admeasure, but it is, under reasonably certain situations, an element to be given consideration in making an appropriate award. The Melody, 9 Cir., 157 F.2d 448; North Star-Frigidland,[1] (D. C.N.D.Cal.), 1940 A.M.C. 1017.

The evidence preponderates in showing that at the time of answering the "Fearless" distress call tuna were running in the vicinity of the "North Queen" and she was in the very act of setting her nets for a catch when she went to assist the "Fearless." The depositions from the masters of eight other fishing boats in the same vicinity indicate that with varying degrees of success they were all catching tuna and skipjack on June 4th, 5th and 6th, the three days that the "North Queen" was prevented from fishing by reason of the salvage operations to the "Fearless." The record shows, however, that fewer fish were caught by any of the eight on June 4th than upon either of the other relevant days, and while the record before us does not permit of application of the method adverted to in North Star-Frigidland, supra, we have concluded that a

[1] No opinion for publication.

fair average allowable to the libelant for the loss suffered as a result from a deprivation of fishing is twenty tons, and upon such basis we find a loss to the salvor "North Queen."

The record before us shows that a settlement has been made with the "Sea Giant" for the salvage contributions made by the "Sea Giant" in the operations under consideration in this proceeding, and it is also clear from the record that ten tons of tuna which were aboard the "Fearless" when the "Sea Giant" came alongside the vessel and commenced salvage operations were delivered to the "Sea Giant," and undoubtedly were given consideration in the settlement reached between the master of the "Sea Giant" and the owners of the "Fearless."

We conclude by finding the salved value of the "Fearless," excluding items removed by stipulation and interlined amendments to the libel, to be $79,800, and we award the aggregate sum of $18,000 as full compensation for all services contributed and rendered by the "North Queen," her owners, master and crew. The engineer of the "North Queen" by reason of his beneficial skill in accelerating the pumping service to the "Fearless" is entitled to $1500 of the award, and $1500 of the award is to be equally divided with the other members of the crew of the "North Queen." The owners of the "North Queen" to be paid the balance of the award, to-wit $15,000. Costs allowed libelant.

Findings of fact, conclusions of law and decree to be prepared, served and presented by proctor for libelant within five days from notice hereof in accordance with the foregoing conclusions of the court and memorandum and under the rules.