tion, but his contention is that the libelants were not seamen, and performed no, or but little, maritime service on the boat. He claims that the primary object of libelants' employment was the erection of bulkheads upon which the channel lights were placed; that the moving of the boat from place to place was only incidental to the work of erecting the bulkheads; and that such work was not maritime in its character, and created no lien upon the vessel. While it is true that the navigation of the boat from place to place in the bay was only incidental to the work of erecting the bulkheads, which was the main object of her employment, and of the employment of the hands upon her, I cannot agree with the able proctor in the conclusion that the work done and the services rendered were not maritime in their character and created no lien upon the vessel. The work done by the vessel related to and was an aid to navigation and commerce, and the services rendered by the libelants were rendered in the special business of the vessel and in furtherance of the work in which she was engaged. In the case of The Minna, supra, Judge Brown says that "the earlier cases indicate that mere landsmen have no lien unless their labors contribute to the preservation or navigation of the ship, or to the sustenance or health of the crew"; but he considers the better rule to be; and he holds, "that all hands employed upon a vessel, except the master, are entitled to a lien if their services are in furtherance of the main object of the enterprise in which she is engaged." My opinion is that the libelants have a lien for their wages which is enforceable in admiralty. A decree will accordingly be entered in favor of libelants.

---

### SERVISS v. FERGUSON et al.

(Circuit Court of Appeals, Second Circuit. December 14, 1897.)

#### No. 16.

1. SALVAGE—DERELICTS—OBLIGATION OF SALVORS.
   Salvors rescuing a derelict property are under a legal obligation to care for the preservation thereof while they retain possession.

2. SAME.
   Salvors of a derelict barge, who placed her in a slip, where she afterwards sunk, and was then run upon and crushed by a vessel moving about in the slip, *held* liable in damages to her owners for the amount of their loss less a reasonable salvage award, on account of their negligence in not taking other precautions to indicate the positions of the sunken boat than merely notifying persons about the wharf of the place where she was sunk, and then going away, and leaving no one in charge.

Appeal from the District Court of the United States for the Southern District of New York.

This was a libel by William H. Serviss against William E. Ferguson and others, owners of the tug Governor, to recover damages for the loss of a scow. The circuit court entered a decree for the libelant, and the respondents have appealed.

The district court in rendering its decision delivered the following opinion (BROWN, District Judge):

"The defendant, about midnight on February 8, 1895, picked up the libelant's scow, which was adrift with no one on board, in the ice of the East river, and

towed her into the slip between Seventeenth and Eighteenth streets, and moored her outside of another scow there made fast to the dock. Within a few hours afterwards, and while the defendant's tug was temporarily absent, the scow sank at her moorings, without any fault, as I find, of the defendant, and probably through previous injury of the ice. On the return of the salvor a few hours after, it was perceived that the scow had sunk; one mooring line was still taut running down into the water, and some fenders were afloat above her. The slip was occupied by a dredge and several scows belonging to a dredging company, a dumping boat, and several city dirt scows. These were moved around in the slip as occasion required, sometimes by tugs, sometimes by hand. Early in the forenoon one of the boats, being moved by hand, was run upon the sunken scow, but got off with the rising tide. There were contacts by other boats. Some days afterwards, when the scow was raised, it was found to be so crushed as to be worthless. I have no doubt that what was left of her was practically destroyed by the collision with the first boat.

"The libelant contends that the defendant as salvor is answerable for this loss, both for placing the libelant's boat in an unsafe place, and in taking no means for her preservation from injury after she sank. I think the place to which she was taken was well enough, if suitable care had been given to her afterwards; but in this latter respect the libelant's contention must, I think, be sustained.

"A liberal compensation is awarded by the court for salvage services, especially in the rescue of derelict vessels. A corresponding legal obligation rests upon the salvor to take reasonable care for the preservation of the property while he retains possession. Story, Bailm. (9th Ed.) § 623; The Sumner, 1 Brown's Adm. 52, Fed. Cas. No. 13,608.

"The only hesitation I have had in this case has arisen from the circumstances that at least two of the men who were at work about the slip noticed the taut line running beneath the water and the fenders afloat; and that from these circumstances they inferred that there was some sunken craft beneath. The defendant's captain, who had brought the boat in, also testified that he gave verbal notice to a number of persons about the wharf before going away in the morning as to the place where the boat was sunk. No pains, however, seem to have been taken to make this notice general, nor was any special buoy or other mark made of the wreck beneath the water, other than the line and fenders above spoken of.

"The rule of diligence obligatory on salvors is that of ordinary care, such as persons of reasonable prudence would naturally be expected to exercise for the preservation of their own property from loss or injury under like circumstances. Applying this rule, I am constrained to find that the line and the fenders were not sufficient as a reasonable protection to the scow, or a reasonable notice of the sunken wreck, considering the kind of work going on in the slip, and the persons in charge of it. I cannot conceive that a man of reasonable prudence would have left his own boat in that manner, liable to be destroyed by the boats moving back and forth in the slip, with no one in attendance to give warning as to the wreck, or any more plain and recognizable buoys. I must, therefore, allow a decree for the libelant, which will be for the value of the scow at the time she sank in the slip, less one-third thereof, deducted as an allowance for the salvage service.

"If it seems a hardship to require the defendant to pay for a boat they have rescued, possibly from complete destruction, it must be remembered that the compensation which the court awards for salvage services includes the recompense for all the necessary care of the salved property; and that the seeming hardship is no other or different than that in which any other negligent loss involves every ordinary bailee for hire."

James J. Macklin, for appellants.

J. A. Hyland, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. Decree of district court affirmed, with costs, on opinion of district judge.