## THE GEORGE W. ELZEY.

(Circuit Court of Appeals, Second Circuit. April 10, 1918.)

### No. 220.

1. SALVAGE ⚙︎26—SALVAGE IN HARBOR—AWARDS.
    Where assistance is abundant and available, the awards for harbor salvage should be moderate.

2. SALVAGE ⚙︎22—SALVORS—DUTIES OF.
    Salvors, who rescue a vessel, have the duty of exercising reasonable care to protect the property rescued.

3. SALVAGE ⚙︎26—AWARD—DIMINUTION.
    Failure of a salvor to exercise ordinary care to protect the property saved warrants a diminution of the award, for salvage is a reward for successful well-doing.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Salvage.]

4. SALVAGE ⚙︎38—AWARD—AWARD TO MASTER.
    A special award to a master of a tug, which towed a burning vessel from a pier, where it was in danger of destruction by the explosion of war munitions, *held* unwarranted by the evidence.

5. SALVAGE ⚙︎31—AWARD—MEASURE.
    Where a tug towed a burning vessel from terminal piers, on which munitions were stored for shipment and the vessel's salt cargo was lost in extinguishing the fire, so that the hull turned over to the owners was not worth over $30,000, *held*, that a salvage award of $13,500 was excessive, and should be reduced to $7,000, to be divided between the crew and the owners.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by Frederick Bouchard and others against the schooner George W. Elzey, her tackle, etc., claimed by George W. Elzey. From a decree for libelants (242 Fed. 318), claimant appeals. Reversed and remanded, with directions.

The action is for salvage services rendered the schooner by the tug C. Gallagher on the morning of July 30, 1916, by taking her away from a fire at "Black Tom," New York Harbor. This place is a railroad terminal, and at the date given contained, in cars, and perhaps boats also, large quantities of munitions of war. At about 2 a. m. an explosion occurred, and not long afterwards a second one. Articles, including shells, were carried considerable distances, and the destruction at and near the terminal piers was very great.

The Gallagher, a small tug whose value does not certainly appear, carrying (as alleged) a crew of seven men, was lying at Erie Basin. On hearing the explosion, she started for the fire, and took with her, apparently as a volunteer, one John Peterson, a scow master, whose boat was lying near by. She first took away from the piers an iron steamer, and, having gotten that vessel to an anchorage, she turned her attention to the wooden schooner Elzey at about 6:30 a. m. The schooner's master was absent, her crew had abandoned her, and one of them seems to have been killed by the explosion. The vessel was on fire, and there were in the immediate vicinity the tug Genesee, a vessel much more powerful than the Gallagher, and one of the fireboats of New York city. The Gallagher got a line on the Elzey, hauled her about 1,500 feet away from the pier, and anchored her; the fireboat extinguishing the flames on the schooner. The Gallagher took no part in putting out the fire. Her captain then obtained the aid of another tug (the Hercules) and together they took the Elzey to Erie Basin, arriving about 10 a. m. A belief that the well-

⚙︎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

known firm of Gokey might have some interest in the schooner turned out well-founded, and some time in the afternoon one of her part owners appeared and took charge; her master did not arrive until the evening of the following day.

The Gallagher suffered no injury while assisting the Elzey; neither did any of her crew. The schooner was laden with a cargo of salt, which was lost; i. e., melted in the water used in extinguishing fire. The value of the hull as turned over to her owners did not exceed $30,000. The award below was $13,-500—divided $5,000 to tug owners, $5,000 to crew in proportion to wages, and $3,500 personally to libelant Bouchard, the master of the Gallagher. Claimant took this appeal.

Alexander & Ash, of New York City (Peter Alexander, of New York City, of counsel), for appellant.

Foley & Martin, of New York City (George V. A. McCloskey and William J. Martin, both of New York City, of counsel), for appellees.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above).    [1] The rule in respect to harbor salvage, where assistance is abundant and available, we stated in The O. C. Hanchett, 76 Fed. 1003, 22 C. C. A. 678; the awards should be moderate.

[2-5] The peculiar merits alleged in this instance, as gathered from the libel, argument for appellee, and opinion below, are that libelant's personal bravery was remarkable; that the Elzey was most skillfully snatched from danger at exactly the right time—delay would have been fatal; that the schooner was abandoned, if not technically a derelict; and that the other tug near by (Genesee) did nothing. It is not doubted that bravery was displayed, for although, as the event proved, the period of violent explosions had passed before anything was done for the Elzey, unexploded shells lay on the decks of most of the vessels mentioned in evidence, and there was no certainty that those shells, or other cars of munitions, or both, might not blow up at any moment. There was the very pressing terror of the unknown, than which few things are greater. But we discern in the evidence nothing to mark the libelants as courageous above the other men present on police or fire boats and other tugs.

That the Elzey was in imminent danger is plain. She was of wood and on fire; but she had been in great danger for hours before the Gallagher helped her, and the fire was put out by the city fireboat, which took charge after the Genesee had put on her stream. The Gallagher did not assist in that effort. We discover no evidence that the exact moment when the Gallagher towed her from the pier side was of specially vital importance, and it is observable that she had been left there for several hours while the Gallagher devoted her energies to the removal of an iron steamer lying near by and of greater value.

That the schooner was abandoned, and had not a man on board to cut a mooring or take a line, is undoubtedly a circumstance enhancing the value of the service rendered. That there was nothing done by the Genesee is not true. That tug was on the ground (so far as the Elzey was concerned) an hour before the Gallagher, and tried to pull

the schooner out. Her line parted, and before she could, or at all events did, get out another, the Gallagher got her line on, and one tug was enough for the work. Thereafter the Genesee played on the fire from her standpipe, until the fireboat took charge, when she retired on the fireman's orders, as was proper. There is no doubt that both the fireboat and the Genesee were far more powerful than the Gallagher; nor was there any remarkable management or maritime skill necessary or displayed. All the masters present were no doubt good tugboat men, and the evidence yields no proof that any more than the great, but daily exhibited, skill of such men was exercised or required.

On the other hand, appellants complain that the salvors failed in their duty of caring for the schooner while they were in possession of her, and that the special award to Capt. Bouchard is beyond all right or precedent. When the Gallagher and Hercules took the Elzey to Erie Basin, they moored her where men from other nearby vessels and apparently from the shore could easily get aboard. She was much injured by explosion and on her deck lay pieces of shell; she was overrun by curiosity seekers, and according to credible and disinterested testimony unbroken boxes were removed from her. When her master returned, clothing, provisions, nautical instruments, and the brasses of the engine were gone. It is not possible to find certainly from this record who took these articles, or their aggregate value; but it is clear that these libelants did fail in the active duty laid on salvors in possession of caring for what they have in charge (Serviss v. Ferguson, 84 Fed. 202, 28 C. C. A. 327); they did not exercise reasonable care (The Henry Steers, Jr. [D. C.] 110 Fed. 578; The Bremen [D. C.] 111 Fed. 228); and, while this failure of duty is far from sufficient to forfeit award, it must diminish the recovery, for salvage is not only an award, but a reward for successful well-doing.

The gift of $3,500 to Captain Bouchard, in addition to his wage share of the $5,000, is without precedent, nor do we find any reason for it in the evidence. The measure of his bravery and skill has been stated above, and why he should thus be singled out for especial enrichment we fail to see. In result this cause differs from any reported case of harbor fire salvage in two matters making for increase, viz., abandonment and apprehended danger from exploding shells, and in one inclining toward diminution, negligence of salvors after danger past. It may be noted that this negligence was peculiarly that of the man in command, the captain. Citations in salvage are rarely useful, but the following are of fires in local waters: The Kaaterskill (D. C.) 48 Fed. 701; The Lydia (D. C.) 49 Fed. 666; The Helen F. Robbins (D. C.) 55 Fed. 1014—and furnish some guide.

Upon weighing the foregoing considerations, it is thought that an award of $7,000 is ample, whereof one-half to the crew in proportion to wage; Peterson to share according to his scow man's pay.

The decree appealed from is reversed, with the costs of this appeal to appellant, and cause remanded for further proceedings in accordance with this opinion.