THE CAPE RACE. THE THETIS. THE WOODMANCEY.

(Circuit Court of Appeals, Second Circuit. March 7, 1927.)

No. 174.

1. Towage ⊛15(2)—Negligence of tug may be inferred from unexplained parting of steering cable.

Negligence of tug may be inferred from unexplained and unexcused parting of her steering cable, such occurrence not being an inevitable accident.

2. Towage ⊛11(1)—Negligence of salving tug, rather than of disabled tug, held proximate cause of damage to barge.

Where tug, coming to the aid of another tug which, with broken steering cable and barge alongside, was drifting onto rocks, miscalculated the currents, and approached at a speed which caused her to collide with the barge, held, negligence of salving tug, rather

than negligence of disabled tug, was proximate cause of the damage to the barge.

**3. Negligence ⊙→56(1)—There cannot be two proximate causes of same result.**

There cannot be two proximate causes for the same result, though there may be a plurality of contributing causes, all of which may be equally proximate.

**4. Salvage ⊙→22—Negligence of would-be salvor, when established, entails responsibility as does other negligence.**

Conduct of a would-be salvor is viewed with a benevolent eye, but, when negligence is plainly proved, it entails responsibility, as does negligence in the performance of any other assumed or imposed duty.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by M. & J. Tracy, Inc., owner of the barge Cape Race, against the steam tug Thetis, her engines, etc., the Newtown Creek Towing Company, claimant, and the steam tug Woodmancey, her engines, etc., James F. Woodmancey, claimant. From a decree for libelant against the steam tug Thetis only, the Newtown Creek Towing Company appeals. Decree reversed, and cause remanded, with directions.

Appeal from final decree in admiralty, entered in the District Court for the Southern District of New York.

Libelant is owner of the barge Cape Race, which, made fast to the port side of the Thetis, left Newtown creek for Port Morris on a fair day in May, 1921. The tide was strong flood, but for purposes of navigation the weather was negligible.

When in the Hell Gate region the steering cable of the Thetis parted, and tug and tow were helpless. In the violent currents there prevailing the Thetis and her barge swung completely around and began to drift toward the rocks on the Astoria shore. The Thetis blew for aid, and the Woodmancey, which was near by on the Long Island shore, came to assist.

The Woodmancey's navigator intended and attempted to render aid by going between the Cape Race and the Astoria shore, in order to shove the barge, with the Thetis attached, away from the rocks. He thought this more effectual than waiting to get out a line and pull. The barge was swinging in the current, and, as the Woodmancey approached her stern, she swung across the path of the Woodmancey, and the tug hit the Cape Race head-on at a point on her stern between six and ten feet from the port after corner.

To recover for the injuries thus sustained, this libel was filed. The court below held the Thetis solely liable, and that tug appealed.

Gerald J. McKernan and Macklin, Brown, Lenahan & Speer, all of New York City, for libelant.

Delancey Nicoll, Jr., and Nicoll, Anable & Nicoll, all of New York City, for the Thetis.

Peter Alexander and Alexander & Ash, all of New York City, for the Woodmancey.

Before HOUGH, HAND, and MACK, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] That negligence by the Thetis might be inferred from the unexplained and unexcused parting of her steering cable, may be admitted. The tug's breakdown was not inevitable accident, within the rule of The Merchant Prince [1892] P. D. 179, as enforced in The Edmund Moran (C. C. A.) 180 F. 700, and The Bayonne (C. C. A.) 213 F. 216. Yet it remains true that the barge in tow received no injury as the result of that inferred negligence until the Woodmancey arrived, and then directly from and by Woodmancey's act, or failure to act.

It may be assumed that, had no assistance been proffered by the Woodmancey, or if, despite the reasonably skillful efforts of that tug and of the Thetis to get her emergency steering gear in operation, the barge had gone on the Astoria rocks, the Thetis would have been solely responsible; but she would then have been fixed with liability because her negligence was the proximate cause of stranding. Therefore the question now arises whether, since no stranding occurred, what did happen was *proximately* caused by the parting of the Thetis' steering cable.

[2] By the accident to the Thetis, a condition arose which was very likely to develop into a cause of damage. That condition required assistance, which assistance would plainly produce a salvage, and the Woodmancey came to render a salvage service, not only to the barge, but to the Thetis as well; for though, at the moment, the Cape Race was next the rocky Astoria shore, the peril of the Thetis was, in the currents of Hell Gate, just as real.

The story of collision between tug and barge was not told by the bargemaster, who died before trial; the account given by the Woodmancey's master is that the Thetis and barge were "coming up stern first." The Woodmancey approached against the tide, slowed her engines 300 feet away, stopped them at about 200 feet, and steered "to get between the shore and the Cape Race."

When within "25 feet, or 50, * * * something or other came into contact with either the Cape Race or the Thetis, or else something came in contact with my bow, and it got so close and came so quick that I could only ring two bells, and a jingle to go back," before collision occurred. The jar was so great that the wheel escaped the master, glass was broken in the pilot house, to the master's injury, which injuries may account for the somewhat incoherent story just quoted.

The deckhand of the Woodmancey, who took charge after the accident, and towed the Cape Race to shore, testified: "The reason for the collision was that eddy tide running down along the shore and the stern of the boat [Cape Race] getting in, with the flood tide on the bow; * * * the flood tide on the bow would have a tendency to throw the bow of the boat out with that eddy tide, and the stern would be thrown in toward the shore."

The master of the Thetis, seeing the approach of the Woodmancey, went aboard the Cape Race to "strike a bargain" with the other tug, and testifies that he regarded collision imminent when the Woodmancey was about "50 feet away," and agrees that backing bells were not rung until only about 25 feet intervened between barge and salving tug. The blow was heavy, but damage mostly above water line; wherefore, by stuffing the hole with mattresses and quick unloading of cargo at the stern, serious loss was averted.

We think it plainly proven that collision arose from a miscalculation of the currents, which had turned the Cape Race completely around, and would certainly twist her again. It was a case of "close shaving," and also of approach at too great speed. This was negligence, and the direct cause of injury.

Further, this cause was proximate, and had no causal relation to the Thetis' breakdown. The circumstances would have been the same, and the negligence the same, had the barge never seen the Thetis, but been driving through the Gate after parting her moorings at a nearby wharf.

[3] There cannot be two proximate causes for the same result. The Sunnyside (C. C. A.) 251 F. 271. There may be a plurality of contributing causes, and all may be equally proximate; but that is not the case here. It follows that the erroneous navigation of the Woodmancey was the proximate cause of the damage complained of.

[4] It may be gathered from the cases that negligence in a would-be salvor is perhaps viewed with a benevolent eye; but, when

18 F.(2d)—6

plainly proved, it entails responsibility, as does negligence in the performance of any other assumed or imposed duty. That for negligence a salvage award may be diminished or denied we have pointed out in Serviss v. Ferguson (C. C. A.) 84 F. 202; The Geo. W. Elzey (C. C. A.) 250 F. 602. Generally every salvor is bound to the exercise of ordinary skill and diligence. The Allegiance, 6 Sawy. 68, Fed. Cas. No. 207. The matter was exhaustively considered by Lurton, J., in The S. C. Schenk (C. C. A.) 158 F. 54, with this result: "When a distinguishable injury has resulted from the negligence of one undertaking a salvage service, there may be not only forfeiture of all right of salvage, but an affirmative award of damages against the salving vessel."

This we think such a case. Decree reversed, with costs to appellant against the Woodmancey, and cause remanded, with directions to enter decree enforcing liability for libelant's damages against the Woodmancey only. Costs of District Court to be awarded in the discretion of that court.